## GLASGOW and others *v.* FRITTS.

*(Circuit Court, N. D. Illinois.* November 10, 1884

PATENTS FOR INVENTIONS—ANTICIPATION—MACHINE FOR PREPARING AND GILDING MOULDINGS—GLASGOW AND FRITTS INVENTIONS.

Patent No. 226,845, issued April 22, 1880, to William Glasgow, for a machine for enameling or preparing mouldings for gilding, was anticipated by the Fritts machine of 1875, invented by defendant, and is void.

In Equity.

*Mr. Dunn* and *Mr. Banning,* for complainant.

*Mr. Stout,* for defendant.

BLODGETT, J. This is a bill to restrain the alleged infringement of patent No. 226,845, issued April 22, 1880, to complainant, for a "machine for enameling or preparing mouldings for gilding," and for an accounting. The defenses are:

(1) That defendant does not infringe; (2) that the machine covered by complainant's patent was not the sole invention of complainant, but was the invention of the defendant and complainant acting together; (3) that the machine, or the substantial and operative parts thereof, used by defendant, was invented and put in public use by him more than two years prior to the application for a patent by the complainant.

The machine described in the patent is a device for coating mouldings for picture-frames, looking-glasses, and kindred uses, with an enamel made of whiting and glue, as a foundation on which to lay the gilding. The process by means of this device consists in running or pushing the moulding to be coated through a box filled with the enameling or coating composition in a plastic condition, whereby a sufficient amount of the composition to form a coat of enamel adheres to the moulding, and the coating thus taken on is smoothed and compacted by steel or iron templets or forms, which fit over the external surface of the mouldings where they leave the box; and in the patented device these templets are placed both at the place of entrance and of exit, and the machine consists of feed-rollers and pressure-rollers, by which the moulding is fed or forced endwise through the enameling box, and held in proper position for that purpose. The patent contains nine claims, all being for a combination of different members of the machine working together to produce the desired result, and the defendant is charged with the infringement of all

but the third claim. The proof in the case shows that, as early as 1875, the defendant, Fritts, caused a machine to be made and put in use, a model or illustration of which is in evidence in the case, marked "D. H. Fritts machine;" and there can be no doubt, I think, from the proof, that this machine worked successfully in coating what was known as linings for picture-frames, which is the small or inner frame lying next to the picture, and usually of a flat or bevel shape. This machine was so organized as to press or crowd the mouldings endwise through the composition box, and the composition was smoothed and compacted upon the surface of the strip so operated upon by means of a templet of the shape of such lining or strip; that is, the templet was cut so as to fit over the upper cross-section surface of the strip, and in passing through this templet or form the enamel, which adhered was smoothed, and made compact and firm.

There seems, from the proof, to have been two kinds of machines or devices made by Fritts for this purpose, in one of which the lining or strip to be operated upon was forced through the composition box by what is called by the witnesses the "chain-feed," that is, as near as I can understand from the proof, a chain actuated by power was so arranged that by friction contact with the strip it carried or thrust the strip through the composition box. In the other machine, known in the proof as the "D. H. Fritts machine," the motion was imparted to the strip to be operated upon by friction rollers pressing against the under side of the strips, and the strips were held in place by pressure rollers bearing upon the upper side of the strip so as to hold the strip in place and carry it steadily into and through the composition box. From a careful comparison of the "D. H. Fritts machine" of 1875, as illustrated in the model and proof, with the mechanism described in the patent, I can see no substantial difference in the mechanical organization or result of the two devices. The Fritts machine of 1875 imparted the necessary motion to carry the moulding into and through the box by friction rollers, operating upon the under side of the machine. The complainant's machine does the same thing. The Fritts machine of 1875 held the strip to be operated upon with the requisite amount of pressure down upon the friction rollers by pressure rollers, held in place by brackets and adjusted by screws. The complainant's patent provides for a somewhat different arrangement of the pressure rollers, because the complainant seems, at least, to assume that, in coating moulding which had an irregular surface, the pressure rollers should bear upon the different parts of those surfaces so as to secure a steady and even motion through the composition box, while the Fritts machine, being intended to operate mainly upon only a strip having a flat or beveled surface, the pressure rollers were arranged so as to give only one bearing.

I cannot see, however, that there is any patentable difference in the two devices. The patent shows a more complicated machine,

and one calculated, at least, theoretically to meet more changes of surface than that specially provided for in the Fritts machine, but still, it seems to me that, when once the idea of carrying a strip, for the purpose of coating it with enamel, through a composition box, by means of friction rollers, and holding it in place by pressure rollers, was shown and illustrated by an operative machine, the number and places for the bearings of the pressure rollers was after that only a matter of mere mechanical adaptation. The moulding or strip to be operated upon forms the bottom of the composition box in both these machines, and hence the sides of the composition box must necessarily be movable to adjust them to the different widths of the strip to be coated or operated upon, and hence I find that in the original Fritts machine of 1875, and in the complainant's machine as described in his patent, there is a provision for setting the sides of the composition box farther apart or nearer together, as the necessity may require. The plaintiff provides for this necessity by what he terms his bracket, H, leaving the sides of the box movable so that they may be held in place by the brackets as they are from time to time adjusted by set screws in a slot upon the frame of the machine; while Fritts, in his original machine, provided a frame which embraced, and, within certain limits, held, the sides of the machine in place, but they were movable in or out to accommodate the width of the strip to be operated upon by loosening and tightening certain thumb-screws which are shown in the device. The movable sides of the composition box are therefore shown in both machines, although slightly different means are employed for securing the adjustability of the sides, and fastening and holding them in place. It also seems to have been found necessary in practice to make the composition box slightly adjustable vertically, so that it may tip to some extent to accommodate itself to the inequalities of the strip of lining or moulding to be operated upon; and the complainant describes in his patent the means by which that element of adjustability is secured by springs and screws. In the Fritts machine this element of adjustability is obtained by means of certain rubber washers placed upon the bolts which held the composition box to the frame of the machine, whereby a certain amount of yielding or tipping was provided for.

The proof shows that Fritts, after the construction of his machine in 1875, was not entirely satisfied with its working, and thought it could be improved. With a view to secure further improvements upon it, he consulted with Glasgow, the complainant, stating to him the difficulties which he had encountered so far in his experiments, and suggested that, as Glasgow had been somewhat successful as an inventor of mechanical devices, he should make an attempt at further improvement in the Fritts machines, and Glasgow accordingly commenced, sometime in the latter part of 1878, to devise and construct an improved machine, and in the latter part of March, 1879, he had constructed a working-machine which he states was

substantially the same as is covered by this patent; and about the time this machine was completed and ready for operation, Glasgow and the defendant formed a partnership for the purpose of operating it, and defendant states it was the understanding between them that a patent was to be applied for and owned by them jointly as the result of their joint invention. This partnership continued until the latter part of 1879, when the defendant sold his interest in the business and in the machines and patent, if one was obtained, to Swords & Rice, and shortly afterwards the defendant started business on his own account, constructing several machines, which he has been using since that time in the business of enameling or whitening mouldings.

The complainant states that he was in no degree instructed or aided by the defendant in making the machine described in his patent; but I can hardly believe it possible, that while the defendant and the complainant were working together for a common object during several months that elapsed between the time that complainant attempted the construction of the first machine and the time of their dissolution of partnership, which was nearly a year, that whatever progress had been made by Fritts in the construction of the machine for the purpose desired would not have been made use of, and comparisons of what the complainant intended to produce and what Fritts had already done in the same direction would not have been made. It is not possible for me to conceive that two men, working together to a common end, would not have availed themselves of all that either of them had previously done; the successes and failures of Fritts' machine, and especially its capacity or adaptation to coat mouldings as well as linings, would have been a matter in which they must have taken an interest. It therefore seems to me an inevitable conclusion, from the proof in this case, that the machine described in the patent is only the more elaborate and perfected device which was at least foreshadowed by the Fritts machine of 1875. It is but the natural conclusion, that whatever Fritts had accomplished, and whatever Fritts knew about the effort to coat or enamel mouldings by machinery, should have been used by both these parties as the common starting point from which to make the machine finally constructed by complainant, or by him and defendant; and assuming, as I must from the proof, that the "D. H. Fritts machine of 1875" was an operative machine, and which successfully enameled linings or inside strips for picture frames, I can see no element of invention in the machine described by complainant's patent. The templet in the composition box which scraped off the superfluous coating of the composition, so as to give the lining strips a uniform and smooth compacted coat of the enamel or composition, is the special feature or element of the whole device, and if a templet fitting the upper external surface of a lining could be cut so as to give a smooth and satisfactory coating to a leveled or flat piece of wood, there is certainly no invention in

afterwards cutting a templet to fit the external surface of a more elaborate piece of moulding, so as to smooth and compact the coating upon such piece of moulding; and, as I have already said, the friction rollers, by which motion is imparted to the strip to be operated upon, and the pressure rollers by which the strip is held in place in its progress through the composition box, as shown in the original Fritts machine, are substantially, and for all the functions of their performance, the same as the friction and pressure rollers employed by the complainant. The means for increasing or diminishing the width of the composition box, as described in the patent, are somewhat different from those adopted by Fritts in his earlier machine, but they are, after all, a mere colorable change producing no new result, and therefore having no special element of advantage over that shown in the original Fritts box, which should make them the subject of a patent either by themselves or in a combination.

I am therefore compelled to find, from the testimony in this case, that the essential elements of this patent are found in the original Fritts machine of 1875. The complainant's machine, as described in his patent, when compared with what Fritts had previously done, impresses me, more as a study to make a device which should apparently differ from what Fritts had accomplished than as a machine with any real difference. The parts are more complicated, and express provision is made for securing a bearing by the pressure rollers upon the different parts of the surfaces of the moulding, but I can see nothing in the patented device except a mere adaption of the mechanical improvement upon what is fully suggested in the original Fritts machine. If I deemed it necessary I might go through and analyze all the different claims in the patent, and show, as I think it quite satisfactorily appears, that if these combination claims are valid, the defendant does not infringe them. For illustration, the first claim is:

"In a machine for enameling or preparing mouldings for gilding, the combination with the feed-roller, N, and, having their journals in a stationary frame, A, of the table, B, having an opening through which pass the peripheries of the rollers, said table being vertically adjustable with relation to the position of the rollers, substantially as and for the purpose set forth."

This claim for a combination of the feed-rollers and the table is certainly not infringed by the machine used by the defendant, as shown by the proof, because the defendant does not use the table, B, or anything which seems to me to be the equivalent of it. So, too, the second claim, which is for the combination of the frame, A, the feed-rollers, N, and the table, B, with laterally adjustable gauges, C, does not seem to me to be infringed by the defendant, because the table, B, is not found in the defendant's device, nor does the defendant use the laterally adjustable gauges, C, described in the claim.

Much stress was laid in the argument upon the vertically and laterally adjustable tracks, M, as shown in the patent, and the seventh

claim in the patent is for the combination of these tracks, M, with the adjustable table, B. The defendant's composition box runs upon a sort of platform, or table, as he calls it, interposed between the frame on which the machine stands and the composition box, and upon this table are placed strips capable of being adjusted nearer together or wider apart, by means of slots and screws, upon which the strip of moulding to be operated upon rests in running through the composition box. These tracks or strips are not the equivalent for, and do not take the place of the tracks, M, described in the patent, because they are not vertically adjustable; but, even if they did, the tracks, M, as shown in the patent, are evidently but a mere modification of the device shown in the original Fritts machine of 1875 for carrying the moulding under the box. So I might go through with all the elements of these combination claims, and, as I think, easily demonstrate that the defendant does not use the same combination that is shown in these claims, with all the elements of the combinations in other words, as used by the defendant; but I think the broader and fuller answer is, as I have already stated, that whatever there is of utility in this machine and the various parts thereof, seems to have originated in the old Fritts machine of 1875; I am therefore of opinion that this patent is void as having already been anticipated in the art, and that the substantial elements of it, combined and used as described in the patent, were well known for many years prior to the time that complainant entered the field.

The bill is dismissed for want of equity.